**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GARY L. KLINE, and BARBARA J. KLINE,

          Plaintiffs,

v.

Case No. 08-14541

HON. MARIANNE O. BATTANI

SIDNEY RUBIN, JOHN FLETCHER, DALE A. STUART, JOHN BACZYINSKI and CITY OF KEEGO HARBOR,

          Defendants.

_____/

## OPINION AND ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANTS

**I.**    **INTRODUCTION**

Before the Court are: (1) Defendant John Fletcher's Motion for Summary Judgment, (doc. 56); (2) Defendant City of Keego Harbor's ("the City") Motion to Dismiss and/or For Summary Judgment, (doc. 58); (3) Defendant Dale Stuart's Motion for Summary Judgment, (doc. 59); and (4) Defendant Sidney Rubin's Motion to Dismiss or, in the Alternative, for Summary Judgment, (doc. 60). For the reasons discussed below, the Court grants summary judgment to Defendants.

**II.**    **STATEMENT OF FACTS**

Plaintiffs Barbara Kline and Gary Kline are residents of the City of Keego Harbor, Michigan. Barbara Kline has been active in local politics for some time, and in 2006 the City Council appointed her to be the City's Mayor. She held this position through

November 2007. Near the end of July 2008, she announced her intention to run for City Council. She was defeated, however, in the November 2008 election.

Plaintiffs own and live on a parcel of property in the City that encompasses two lots. In May 2006, Plaintiffs began keeping a 37.5-foot motor home on the property. Plaintiffs' neighbor, Gloria Shushtari, believed Plaintiffs' property contained numerous ordinance violations relating to, among other things, the presence of the motor home. Shushtari discussed the alleged ordinance violations with Defendant Sidney Rubin, and he told her that she needed to fill out a complaint form and go through proper channels. Rubin had served on the City Council since 2005, being elected in both 2005 and 2008. He also served as Mayor from November 2007 through November 2009.

On May 22, 2007, Shushtari filed a complaint with the City that stated:

> Barbara Kline was told about keeping RV in driveway plugged in, she has continued doing so again using black cord not orange & hiding . . . . Why is double standard allowed. If nothing is done, I will pursue with any means necessary to resolve. I am fed up with looking at the double standards allowed everyday.

At a city council meeting in 2007, Shushtari presented various photographs that she had taken of Plaintiffs property. The Court has been presented with photos of Plaintiffs' property that were taken in March 2006, July 2006, October 2006, December 2006, July 2007, and September 2008. It is not clear from the record whether these include the photos taken by Shushtari.

After asking Sergeant Dan Reynolds to investigate the complaint, and receiving his conclusion that there was no violation, the City Council determined on June 25, 2007 that Plaintiffs' motor home did not violate any ordinance by being plugged into an electrical outlet. In particular, the City Council found that the motor home could be

plugged in to keep the battery charged so long as it was not for the purpose of making the motor home inhabitable. Subsequent to this, Reynolds was told not to go to City Council meetings and was "relieved of the duty of property maintenance issues in Keego Hargor." To Reynolds' knowledge, this was not in any way related to his recommendation regarding Plaintiffs' use of the electrical cord with their motor home.

Shushtari subsequently met with Defendant Dale Stuart, the City Manager, in early 2008 to complaint about the Plaintiffs. At this meeting, she inquired as to whether the motor home could be on the premises. Defendant John Fletcher, a member of City Council, testified that he had received complaints from both Shushtari and the Kalmans, who also were neighbors of Plaintiffs, regarding the motor home.

Section 4.04(e) of the City's Zoning Ordinances indicated that a recreation vehicle stored on residentially used property could not exceed 25 feet in length. Section 4.05(b) of the City's Zoning Ordinances, however, indicated that a motor home stored "on a vacant, separate lot of record than the principal structure" could be up to 40 feet in length.

On April 10, 2008, Rubin emailed Stuart and asked for his opinion along with the opinion of the City Attorney regarding whether Plaintiffs' 37.5-foot long motor home violated city ordinances. An exchange of emails subsequently occurred between Fletcher and Stuart wherein it was indicated that the City Attorney expressed the opinion that the motor home did not constitute a violation because it was on a vacant lot next to Plaintiffs' residence. Fletcher, on the other hand, believed that the lot was not vacant because it was next to, and not partitioned off from, the lot on which the Kline's reside.

On May 20, 2008, Stuart sent a letter to Plaintiffs informing them that the City had concluded that the motor home violated City ordinances in two ways: (1) it was not allowed to be connected to an electric power source; and (2) it exceeded the permissible length for an occupied residential lot. The letter notified Plaintiffs that they would receive a citation to be heard in the 48th Judicial District Court if the motor home was not removed from the property by May 30, 2008. In addition, the letter notified Plaintiffs that they could appeal this interpretation of the ordinance to the Zoning Board of Appeals if they wished. A citation relating to the length of the motor home, but not for the use of the electric power source, was issued to Plaintiffs on June 12, 2008.

On August 7, 2009, a 48th District Court opinion determined that the lot with the motor home was not vacant because it contained a driveway, walkway, and the apron to a large garage that was on the Kline's adjoining lot. As such, the court found that the motor home constituted a violation of the City ordinance relating to motor homes stored on residentially used property. On December 2, 2009, the 48th District Court denied Plaintiffs' motion for reconsideration. On May 4, 2010 a Michigan Circuit Court Judge affirmed the decision of the District Court.

Plaintiffs subsequently filed the present action in this Court. In their complaint they allege that the individual Defendants and the City violated 42 U.S.C. § 1983 by depriving them of their First and Fourteenth Amendment rights. (Counts 1, 3, 5, and 8). Plaintiffs also claim that the individual Defendants violated their rights under the Equal Protection Clause. (Counts 2, 4, and 6).[1]

---

[1] Count 7 was against Defendant John Baczyinski, who has been dismissed from the suit.

## III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008). However, the nonmoving party "cannot rely merely on allegations but must set out specific facts showing a genuine issue for trial." Chappell v. City of Cleveland, 585 F.3d 901, 906 (6th Cir. 2009).

## IV. ANALYSIS

### 1. Equal Protection

The Equal Protection Clause of the Fourteenth Amendment prohibits any state from denying equal protection of the laws to any person within its jurisdiction. See Club Italia Soccer & Sports Org., Inc. v. Charter Township of Shelby, 470 F.3d 286, 298 (6th Cir. 2006). In order to establish a violation of the Equal Protection Clause, the plaintiff must show that the government treated the plaintiff differently than similarly situated persons and that the treatment either burdens a fundamental right, targets a suspect class, or has no rational basis. Id.

Plaintiffs' Equal Protection claim fails because they have not shown that they were treated disparately as compared to similarly situated persons. Plaintiffs provided no evidence of similarly situated persons in their response to Defendants' motions. During oral argument, however, Plaintiffs' counsel indicated that he had presented evidence during discovery that showed other similarly situated persons who were treated differently from Plaintiffs. The Court permitted Plaintiffs to submit this evidence as part of a supplemental brief.

In their supplemental brief, Plaintiffs submitted nine black and white copies of photographs that they contended "might" show other ordinance violations. This evidence is insufficient for a number of reasons. First, it is impossible to tell by looking at the copies of the photographs whether there are any ordinance violations, and Plaintiffs have presented no evidence indicating that the items in the photographs constitute ordinance violations. Second, there is no evidence that these other supposed ordinance violations resulted in complaints to City authorities from neighbors, as happened with Plaintiffs' motor home. Third, no evidence was offered showing whether these other supposed violations were ticketed by the City. Plaintiffs' evidentiary offering falls far short of showing similarly situated persons who were treated differently. See Chappell, 585 F.3d at 906; Club Italia Soccer & Sports Org., Inc., 470 F.3d at 298. Accordingly, Defendants are entitled to summary judgment of Plaintiffs' Equal Protection claim.

### 2. First Amendment Retaliation Claims

In order for a plaintiff to establish a claim of First Amendment retaliation she must show,

> "(1) that she was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused her to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of her constitutional rights."

Cockrel v. Shelby County School Dist., 270 F.3d 1036, 1049 (6th Cir. 2001). "Moreover, the plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." Smith v. Campbell, 250 F.3d 1032, 1037 (6th Cir.2001).

Plaintiffs' First Amendment retaliation claim fails because they have no evidence showing that any of Defendants' allegedly retaliatory acts were done in response to Barbara Kline's protected activity. All that Plaintiffs have offered is evidence of general tensions between Plaintiffs and Defendants. The mere fact that there was tension between Plaintiffs and Defendants, however, does not show that Defendants retaliated against Plaintiffs on account of their protected activity. Therefore, Defendants are entitled to summary judgment of Plaintiffs' First Amendment Retaliation claims.

## V. CONCLUSION

As Defendants are entitled to summary judgment, their motions are hereby **GRANTED**.

**IT IS SO ORDERED.**

                                          s/Marianne O. Battani
                                          MARIANNE O. BATTANI
                                          UNITED STATES DISTRICT JUDGE

DATED: May 24, 2010

**CERTIFICATE OF SERVICE**

      Copies of this Order were served upon counsel of record on this date by ordinary mail and electronic filing.

                                          s/Bernadette M. Thebolt
                                                Case Manager